Good morning, Your Honors. Hal Rosner, representing the Plaintiff, Appellant, and Appellee. It's my understanding that we've consolidated, for purposes of today's hearings, both the appeal filed by the Plaintiff and the appeal filed by Carmax from their motion for attorney's This case was brought by a young man purchasing his first vehicle from Carmax. The vehicle that he purchased was accident damaged and mechanically unsound, having both engine and transmission problems. It's our belief and contention that the District Court erred in dismissing the First Amendment complaint, the Second Amendment complaint, and granting a motion for summary judgment. The original complaint was amended just to change a name, so the First Amendment complaint was the first substantive complaint. I would also note we believe the Court did not have subject matter jurisdiction of this $24,000 vehicle. In the First Amendment complaint, the simplest error, though not the focus of much of the pleadings here, was did Plaintiff state a claim for breach of implied warranty? Plaintiff, in his First Amendment complaint, at paragraph 64, alleged, the vehicle was delivered to Plaintiff with serious defects and nonconformities, including but not limited to a defective and malfunctioning engine, transmission, incident panel, and accident damage. The complaint goes on to say that these significant nonconformities affecting safety, use, and value of the vehicle were never remedied. That's a Solemn Beverly Act claim. I've done literally hundreds, if not thousands of them. That's what an implied warranty is. The District Court used the wrong standard and went back to American Suzuki, a product liability case dealing with Suzuki's flipping over and whether it was a manifestation. They state there being a myriad of new law like Brand vs. Hyundai upholding that an effective sunroof that interfered with the use of the vehicle could support a claim for implied warranty. So, there was simply no basis both for the Court dismissing it in the First Amendment complaint and the Second Amendment complaint. There was a clear Lemon Law case and it's definitely implied warranty when you're told the vehicle is certified, inspected, and it was alleged specifically that the plaintiff asked, was this car ever in an accident? And CarMax told them, no, we don't sell accident damaged cars. And it turns out it was an accident damaged car. To hold that that can't state facts constituting a cause of action was clear error. Much of this case, however, focuses on the other big issue. And the big issue being, we sued under provisions of the Vehicle Code that were enacted as part of the California Car Buyer's Bill of Rights. The goal of California, and it's a legislation I personally worked on, which becomes relevant in their motion for attorney's fees, helped draft, went out with the author of the bill, worked with the legislators, worked with the chief lobbyist on passing which would create standards for selling certified vehicles. CarMax sells all its vehicles as certified. Prior to enactment of this law, there were no standards as to what could or was just anyone could say, all are great certified vehicles. So in enacting Vehicle Code 11713.18A, and it's one through nine provisions, there was an effort to set standards. One of the standards was that prior to sale, there was a requirement to provide a completed inspection report of all components inspected. As alleged in the complaints, CarMax does an inspection. They have an inspection report due, done. It's called the CQI-VQI. And on that report, it lists a series of components and the technician checks, not applicable if it's not on the vehicle. He checks pass, fail. And he does this list 260 points. That list is then, they'll put in the computer what they are going to repair, and that list is then destroyed. So when we have a statute that requires you provide a completed inspection report prior to sale, CarMax's policy, which we'll get into, prior to changing it after the Menefee case, which we're still waiting an appellate decision on, was they would put a generic ad. That's all it is. It's a simple advertisement. They would put that ad in the glove box to be found after you bought the car and drove off the lot. Well, he was handed something before. He was handed the one-page report, right? Well, the one-page report, he was handed that in a stack of post. You sign all the documents and they give you a file folder, and they put that one-page document in the file folder. And that's very important because they've mischaracterized it as deposition testimony. If you go to the record, two ER pages, 218. Okay, you're going down a sort of rabbit hole here. You said, you said, this is put in the glove compartment for him to find after he drives off. I was just, that doesn't sound right to me. I don't know what, what you were going to say beyond that, but he is given this other report, which has all the substantive points that are in the glove compartment report. Everything except the signatures. Yes or no? He is given a one, the one, yes, he's given the one-page certificate, so-called certificate, which is a generic ad that actually says on it, says right on it, it's not full and complete. It's a generic ad. Wait, I'm sorry. What are you talking about? Because I'm looking at ER 848, 849, 850. Are you talking about one of those documents? Yes. The generic ad is in various places in the record attached to- When you say the generic ad, is that the thing in the glove compartment or the thing in the, that he's given before? That's the CQ, the CQIVQI. There's a two-sided version and there's a one, sorry, the CQI, there's a two-sided version and one-sided version. Yeah, I think I have that 848 and 849. Is that it? Okay. I'm sorry, I don't have that particular transcript. But the reason I'm focused on this is I'm trying to understand what I think what Judge Biers between Carmax and the purchaser. Let me go through that. After May of 2012, see it changed. Originally, Carmax would just put a copy of their advertisement. But we're talking about your client's case. So it didn't change in your client's case. No. So why don't we talk about what happened? In my client's case, as part of the sales documents that they give you, they give you the one-page CQIVQI report. And it's not a report of any, it's a one-page ad. But can you cite to something in the record so I know I'm looking at what you're talking about? Okay. I had it out as... Is this document 31-3, page 104 or 108? I don't know. It's attached to various parts. ER 848? Right. You'll see the CQ, the two-page one is at 2 ER 221 and 222. But we're talking about the one-page one now. And now I have an ER 848? Yes, Your Honor. Volume two, what? The two-page, which... It's actually a page. It's a two-sided one. There's a two-sided one, which is at 2 ER 221, 222. It's on two pages, but it's actually a two-sided document. And the one-sided one is ER 848, is that right? Yes, Your Honor. Oh, I see the two-page. Okay, so 849 is a two-page one. So what was your client handed? He was handed the one-page one. Okay. And in the sales office... That says your signed CQI certificate can be found in your vehicle's glove compartment. Correct. Now, if you look at that document, you'll see above the things it says, it says we inspect over 125 points, including but not limited to. And then it gives a very generic list of things that might be on a car. The list they provide is a no matter vehicle specific and is self-contradictory. Because for instance, it will list that we inspected your manual transmission and your automatic transmission. The list that we inspected your hard top and your soft top. It's nothing more than a generic list. And it says itself that we inspect more, says we inspect over 120 points. And this is including some of these that are down below. Some apply, some don't. Well, the issue becomes is a generic ad that states it's not full and complete, a full and complete inspection report. And I think Judge Jones... This is the one page. Yes. Okay. And then you've got the two-page report, which is in the glove compartment. Right. It has no additional information. It, however, has someone sign it, as we learned, to get signed before the car is even inspected and put in the glove box. But they sign it and say, here's your vehicle stock number. But nothing is done to make it applicable to the specific vehicle. Okay. And then you said earlier that there's a third report that actually says what they looked at and what was good or bad. That's the CQI, VQI. When they actually... I know. I get it. I know what it is. I have it. But that is the report where the technician actually... That's what most other manufacturers actually give you, is where you actually check. I looked at X component. You could look at that report and know what they looked at. Was it on the car? Did it pass or fail? That report they destroy. What they give the customer is only a generic advertisement. I mean, you wanted to say five minutes, and we haven't gotten to what I think is a fairly important question of jurisdiction. And the district courts in this circuit are divided as to whether you count attorneys incurred after the filing of the complaint. And as I understand it, if I'm correct, we don't have a decision on that question in our court. And there are fairly clearly divided questions in district court. I file motions for remand in these cases. I won half and I lost half. So I think you're absolutely correct. And I think it's an issue that should be addressed. If we take the position that we consider attorney fees after the case is filed and going forward, basically you'll create diversity jurisdiction in virtually every single type of consumer case imaginable if there's an attorney fee clause. To me, it would just open up the federal courts to taking over all state law consumer cases. You can have a $1,000 credit case. The state courts would be grateful. Yeah, they would be grateful. We would not be too grateful. No, these aren't in our favorite kind of cases. And that's the whole reason you can't count it. If you have a $1,000 Rosenthal Act fair debt collection case, you can still come up with attorney fees over $75,000 if you're going to calculate. You can probably come up with attorney fees over $750,000. Yeah, and so... With attorney fees of $2,000 an hour these days. Now, there's district split and there's circuit split on this, right? Yes, it's kind of... But we had a series of district courts actually remand these cases, holding that you should look at it at the time. It's a $27,000 car. I mean, you can have $10,000 cars if you include the attorney's fees. So we agree with the courts that remanded all our cases because we don't think you should count attorney's fees going forward because that really does open it up to every single case. And if you'd be trying every single car individually in federal court. Exactly. It's going to become, you know, because you have diversity in many, many, many sales, including with almost every manufacturer and every Lemon Law case now would be susceptible where the manufacturer has an incorporation outside the state of California. You know, can you just tell us how the circuit split, I recall Judge Easterbrook's opinion. We favor your position. You know, we put in, I'm sorry, in our briefing, the series of where they went on that. It appears, we believe, the majority is following the that you don't count attorney's fees going forward, which really, frankly, is the most sensible approach when you just look at it, not completely opening the court to every single case. And we do have a chance now to directly address that issue. We attached... Not just a chance. I think if it's jurisdiction, we probably have to decide. I would agree. And we attached a series of decisions that district courts gave us remanding these CarMax cases. This judge elected not to do so. But I think this case establishes the point. You have a $27,000 vehicle here. And are you going to make every single vehicle case now subject to federal court jurisdiction? Do you consider both sides attorney's fees? No, you only consider the... No court has held you consider the defense attorney's fees. I thought it was the difference. I mean, if defendants are entitled to attorney's fees, then don't you look at the difference in outcomes? I mean, the one outcome would be they win, plaintiff wins and gets attorney's fees. That's one outcome. The other outcome is defendant wins and gets attorney's fees. Don't you have to look at the spread between them? I don't really, I don't think so, Your Honor. Amounting controversy. Heard. Amounting controversy, right? So if the outcome, one possible outcome is that plaintiff loses and has to pay the other side's attorney's fees, which is being claimed here. Why doesn't that get added to the amounting controversy? Well, I don't believe that it would, because in general, the consumer laws are one-sided provisions. But not in this case. In this case, they are in fact seeking attorney's fees. Right. So even if we're limited to the attorney's fees up to that point, don't you also have to consider the other side? You know, Your Honor, I've got to be honest. In all cases ever decided on this issue, I've never seen a single case say that you consider the defendant's attorney's fees in calculating amounting controversy. That would be a new ruling. We're not adverse to new rulings. I know that. And it's... It's amounting controversy. I would consider it a creative defense argument. I've never seen it. Especially when you have a... I mean, let's say you have a breach of contract case. And if one side wins, one side pays damages, and the other side wins, the other side pays damages. Don't you then look at the spread in deciding amounting controversy? I think... That's what I remember from law school anyway. Yeah, I believe... I did, I did. Hey. I don't... I think that's a very expansive view of federal jurisdiction, which would certainly open up the courts, the federal courts, even more cases. You must forgive Judge Reinhardt. He went to Yale. They don't teach law there. Theory and policy. Theory and policy. Why don't we hear from the other side? I think we've kept you long enough. Good morning, Your Honor. May it please the Court. Kurt Schlichter for Defendants Carmax Auto Superstores California, LLC, Santander Consumer USA, Inc., and Safeco Insurance Company of America. Can you say that three times fast? If I do, Your Honor, I may disappear and return to Kansas. Let me talk about the remand, first of all. I understand that the courts are... The federal courts are full of cases, including consumer cases. I understand that they are not favored. They are not fun. Believe me, they are not fun for us either. But Congress has made it very clear, where more than $75,000 is at controversy, diverse parties have a right to go to the federal courts. Here, the standard is clear error. Judge Carney looked at the statement of damages. Well, you know, clear error doesn't really make a lot of sense with a straight legal question. It may be that's the standard. But you wouldn't want to have... You want to... Even you, I mean, whatever your companies are, would like an answer to the question. And you don't want the answer to be, it depends on which district judge you get, with the same question. Well, Your Honor, it's an interesting question. I would love an answer, but you don't need to reach one in this case. Because we have Judge Carney having a statement of damages for $74,000. Not covered in that are both before attorney's fees, which in the appellant's opening brief, they say it's $5,000. So that would put it over. We say it will be $84,000 through trial. That will pull it over. When you look at the injunction effects, because these cases aren't just about a $30,000... It's actually a $35,000 car. They're not just about a $35,000 car. They're about an injunction that will change the way a company with 20 stores, employing thousands of people, selling 100,000 vehicles a year, will have to do business. And there's a real cost there. And the law is very clear. And we provided documentation to Judge Carney that that will have a price. So between attorney's fees before and after, before or after, and the injunction, you exceed the $1,000 the plaintiff left as that very, very convenient space between what he asked for in his statement of damages. Where he held his punitive damages very low. It wasn't even half of what he argued. It was about half of what he said were his damages, much less than the one to five times it could be rewarded. So Judge Carney here has not made a clear error in assessing these facts. It's a very interesting legal question. I would love to get an answer to it in the right case. But here we don't need to do that because of the facts. How do we figure out a way to get you the answer? I'm sorry, Your Honor? Maybe we can figure out a way to get you the answer. Then you'll be very happy. Your Honor, I spend a lot of time in the Army, so I salute and drive on when I'm told what's going to happen. No, no, don't misunderstand. I mean, I have two UCLA graduates, one on each side, so I can't speak for anything but policy. Well, I'm a loyal grad and I want to take my opponent outside behind him and beat him up in the alley. Let me move on to the actual issue of the Carmax reports and what they really mean and how they really happen. Okay, Carmax gives two reports. Not one, two. Takes one, the two-page, puts it in the glove compartment. Therefore, provides... All right, counsel, this is where... I mean, I don't know if you want to... I have to tell you, having read what Carmax does, I told both my children, don't you buy a certified car from Carmax. I will tell you that because how is this... How is the information that Carmax gives to the seller telling him anything at all? Well, the 4th District of California gives you that answer in the new Brooks case. Oh, I know. I read what the 4th District... But you're in federal court. I am, Your Honor. And I understand the 4th District is not binding on you, but of course, you look at what the intermediate courts will do to, again, understand... To predict what the Supreme Court would do. To predict what the Supreme Court would do. And I don't think the 4th District in California is very predictive of the current Supreme Court. Well, we will find out. The appellant has asked to depublish this case and the Supreme Court has not chosen to do so. Tell me, explain to me how what Carmax does complies with the language of completed inspection report. Perfect. What Carmax does, it gets the vehicle. It inspects it. It usually spends... Well, in this case, we saw it spent hours, spent a lot of money on it. And then it completes inspection. Now, it's doing many different kinds of vehicles. It's doing Toyotas. Right, but is it – it's not necessarily inspecting every single thing that's on the list for every car, because not every car has each of those things. Now, of course, that's not this case. Mr. Gonzalez is not saying, oh, I was terribly confused. You say you look at the manual transmission and automatic transmission, and I didn't know what you looked at on my car when it has an automatic transmission or a manual transmission. I'm not sure which it has. Well, I don't know anything about cars. I just want to know that when you say you've given a complete inspection report, that I'm driving off with a very safe car. Well, you are, Your Honor, because you look at those reports, and it shows what the Carmax – the scope and the depth of the Carmax inspection. It shows what it is. It looks at the engine. It looks at the transmission. Here are some of the items that are part of that. It's not designed for mechanics. That's what the CQI-VQI report is, the one the guys... But that would be very useful to have that on a car, the CQI-VQI. Why do you throw that – why does Carmax throw that away? Well, first of all, it doesn't destroy it. It throws it away after it puts it in the computer. It puts the information in the computer. Remember, no Carmax car is going to be sold if any of those items it looked at are wrong. So you don't need a checkmark saying, yes, this is fixed, because they're all fixed all the time, every time. For that reason, you know, it being 2016, you computerize this stuff. And in the record, there are records... Why don't you print out the computerized information and give it to the purchaser? We do, when they're asked. But there's no requirement under 11713.18A6 to do that. I don't understand. If they just wanted you to hand them a certification, which it seems to be what you hand them, they wouldn't have said completed inspection report. Report signifies that it would contain information. It does contain information, Your Honor. It tells you what we looked at and what we fixed. It gives you an idea of the scope of the inspection. Now, if you'd like to go further, if you'd like to ask one of our people, can I see the vehicle repair order history? Sure. You print it out. You show it to them. Why not? CARMAX has... CARMAX is not... If it hadn't been done here, would it have shown that the car was in an accident? No, because that did not... Well, yes, it may have, Your Honor. I'm not sure. The vehicle... I'm covering all the bases for you. If CARMAX did some further work on it, that is painting a scuff, buffing out a dent, that would be shown. We do a lot of body work on these vehicles, too. Now, we wouldn't sell it if it had frame damage. That violates another part of section B, or subpart B. As I understand it, if a car is in an accident and the accident gets reported to the DMV as it's required to, if the damage is over... $750, Your Honor. I got rear-ended this weekend. Very good. I remember when that amount was $300, or it just tells you how long I've been driving. So that becomes part of the title of the car, somehow. It becomes part of the record in what's called the auto-check system. And now, it's very important in here. In the First Amendment complaint, plaintiff says, well, the auto-check reported an accident. There's nothing in the record. Now, I know what auto-check says, but there's nothing in the record and there won't be because he can't plead anything. It will show how auto-check distinguishes between a major accident where there's huge frame damage and the vehicle has to be completely salvaged, although it will show salvaged title, or a small accident where there's just a bump and you need to buff out the bumper. Carmex has not promised to sell vehicles that have never been in an accident. Now, what I had this weekend is probably about $500 on my rear bumper. That's not a major accident. My Ford Explorer is just fine and will be after it goes to the body shop. That differs from a major accident. And you have a good reason not to report that accident because reporting that accident will make it more difficult for you to sell that car when you go to sell it. But the law says I have to, Your Honor. Well, you said about $500. The limit is $750. And you have every reason to try to stay within the $750 if at all possible. Well, I understand what you're saying. So the question I actually asked was, had Carmex printed out the report that Judge Wardlow was asking about, would that have shown the accident? Does that include information from this car check system? Yes. We print out what's called an auto check vehicle history report. And we didn't really talk about it in the brief, so I don't know exactly where to find it within the record. But the auto check vehicle history report, according to the First Amendment complaint, is what let plaintiffs know that the vehicle had had a reported accident at some point in its history. We give that to every customer. They sign a document acknowledging they've received it. We don't hide it, Your Honor. This was something that was given to Mr. Gonzalez when he bought the car? Yes, Your Honor. Yes, Your Honor, along with the one-page document and all the DMV documents and all the other documents. And let's talk about prior to sale very quickly. In this case, that's not an issue. We have a request for admission where they admitted they received, or Mr. Gonzalez received, the one-page prior to sale. He admitted that. It is conclusive. That is done. So all this stuff about what I didn't get prior because you gave it later. What's not done is whether that one-page document is adequate under the Song-Beverly Act, whether that... Well, the Song-Beverly Act's a different question, Your Honor. This is CLRA. I'm sorry, the what? This is CLRA. CLRA. Whether that report is sufficient under CLRA. And why don't you persuade us that that is sufficient? I think the reasoning of the Fourth Circuit's very good. It is designed to give you the scope of what's looked at, the scope of what's examined, the engine, the transmission. Here are some of the items that are... Even things it doesn't have. Well, yes, Your Honor. There's no allegation here, of course, that he's relying on that. Remember, CarMax is doing many different cars for many different makers over many different years. It does the same systemic inspection of all the vehicles. So it's always going to be the same inspection, essentially. It doesn't make sense to give somebody a list with checkmarks saying, yes, yes, yes, yes, yes, when by definition CarMax refuses to sell anything unless every part it inspects meets its standards. Now, this is not... CarMax is not the corner... You do go on and on, don't you? I ask a simple question and you just go on and on. It's like a... I'm like a lawyer, Your Honor. Were you into car sales at some point, too? I'm very proud of representing CarMax. And I want to... I understand. The fact of the matter is you don't need to have somebody with... give somebody with checkmarks and so on. Right. You can print out a report of everything that's been entered that's actually been done on this car and the report would show the things that have been inspected. Yes. And only the things that have been inspected. No, it would show only the things that would have been fixed if it's the vehicle repair order history. Now, we could print that out. We could give them the CQI, VQI. I'm sorry. I misunderstood what you said earlier because what I heard you say earlier is they do the inspections and they check things off on a piece of paper. Yes, Your Honor. And this being the computer age, we don't keep pieces of paper. We don't. We get rid of pieces of paper because we input all of that stuff in the computer. So I understood you to say when you said that is every time you put a little checkmark on the paper, that checkmark is reflected in some entry in the computer. Well, let me. I gave you a. Did I misunderstand? Well, maybe I wasn't clear, Your Honor. You take the CQI, VQI, any item where there is a problem, you enter that in. Now, if the windows are just fine, you don't enter a problem with the windows. If the tires are just fine, you don't enter a problem with the tires. If the brakes need redone, brake job on the rear rotors. Let's go back. Just make sure this is when you're putting things in the computer or this is when the mechanic is going through doing the inspection. Well, the mechanic's going through the inspection with paper. When the mechanic's finished. I know it's hateful stuff, paper. You know, we never use that anymore. You know, but let's just imagine paper. The mechanic's sitting there and he gets to the tires. The tires look fine. What does he do? He checks. Okay. So he checks. Okay. And that checkmark, how does that get translated into the computer? The only thing, well, you don't put the checkmark that something is fine into the computer. You put the problems in the computer. Everything else is assumed to be correct. So when you said everything that's on that paper gets translated to the computer, you overstated the case. If that's what I understood you to say, then I misunderstood. What you really meant is you have a piece of paper with a bunch of checkmarks and some of that information is put in the computer and the rest of it is destroyed. Well, all of the information is actually in the computer because by its absence. Just answer yes or no to what I just asked you. Is that correct? Some of the information is put in the computer. The rest is destroyed. Yes or no? It's either completely true or if any part of what I said is not true, you can say no, it's wrong. Is any part of what I just said. No, because the repair order history by not, by the absence of a checkmark, demonstrates that the part was fine. Well, no, it may just demonstrate that the suspect didn't look at it, forgot, overlooked. Well, so you know, it is the same question. Checkmark means I have looked at the tires and they are fine. That information is, in fact, not transferred to the computer. There is not a separate manual and restating the question is not going to help you. There is either it is true what I'm saying or it's false. So you tell me which one it is. It's checkmark says I have looked at it. That information is not transferred to the computer. Is that true or false? Well, that is true, but misleading in the... I don't care about misleading. It is, in fact, true. So any number of points of information where the mechanic looks at this stuff, finds no fault, all of those things are not put in the computer. Correct. And therefore, you cannot distinguish the situation where the inspector finds, looks and finds no fault from the situation where he just forgot. If you just look at the computer record, unlike the paper record, you can, you know, if this is a lazy or stupid or forgetful mechanic and he just forgets to look at the left side of the car altogether, all that stuff, if you look at the computer, would seem OK, rather than I forgot to check it. Yes, the possibility for that exists. Excuse me, excuse me, excuse me. Yes, you're OK. Whereas if you look at the piece of paper and he has forgotten to put check marks on the left side of the car, you would be able to say this inspection was not conducted. OK, yes. OK. And that CarMax destroys. Now, CarMax throws it away, Your Honor. Destruction implies some sort of hiding or, you know, devious purpose. There's no devious purpose here. We don't know. I mean, maybe there is, maybe there isn't. The fact of the matter is it does not exist. No, it no longer exists. I'm sorry? It no longer exists in the paper form. It's not preserved electronically in any way. Well, the necessary information is. The information as to the distinguishing between I have looked at it, it's OK, as opposed to I have not looked at it. That information, that information is done away with. I guess you could say that, Your Honor. Destroyed, forgotten, overlooked, discarded. You could say that, Your Honor, but that's not the case here. Why is that adequate under the CRLA? Because the CRLA does not require you to provide a check, a physical check. CARMAX certifies that it is looked at all these parts. It tells the person. Right, but the statute doesn't use the word certify or certification, which is like a representation. The statute uses the word completed inspection report. Yes, Your Honor, indicating all components inspected. Well, this, OK, never mind. And that's what it does. When you get that, you can rest assured that CARMAX has looked at all the parts that are on your vehicle. And CARMAX backs it up with a 30 day warranty. OK, we're five minutes over.  Thank you, Your Honor. Thank you, Your Honor. Just two very important points I did want to bring out. The California Supreme Court wrote both of us a letter that they're considering taking this case on cert on their own motion. They extended their time to decide whether they're going to... I'm sorry, this is Brooks? Brooks, yes. The California Supreme Court notified us that they're considering taking Brooks on cert on their own motion, extended their time... They don't even have cert, do they? Isn't it a petition for review? No, we filed a motion for depublication. The court is still considering that and then issued its own letter that it's taking the case for cert on its own motion and extending its time to August 18th to make that decision. Though, of course, the court can always keep extending its time's limitations on that. So we're waiting to hear both on the court's motion to take cert on its own and on our motion for depublication. Your Honor, I did want to... Excuse me, was that your case? Yes, yes. I was just wondering why you were writing a letter, but it just occurred to me that... It's my case. Brooks is both of your cases. Yes. I take it. Okay. We can do a lot of this. Okay. You had some points, and I think Justice Beverly Reid O'Connell of the District Court of Los Angeles in the Knapp case, which we provided you, directly addressed what you said. In writing on this issue, she wrote, The public policy concerns that led to the bill and statements of legislative intent suggest that the term completed inspection report was intended to refer to a vehicle-specific document. Now, in her case, she overruled all Carmack's arguments and motions on that issue, and in that case, subsequently settled. But what she said, that a vehicle-specific document, when you look at that form, you don't even know which of those items they did or didn't look at. Plus, how can you say it's all components inspected when the form itself sells, including but not limited to? It isn't, because the report that they destroy has 260 items. The list they give you is of 125 duplicative items. It's not. It's just simply one as an add... Destroy, discard. Excuse me? Not destroy, discard. Yes, discard. I'm sorry, Your Honor. Discard quickly, and then only put it in search of information. But one is an add that's used in their ads all over, and one is actually a report, and we actually deposed the head of the California Department of Motor Vehicles, who said this thing's clearly illegal. But in this case, we never got to do the discovery because we were thrown out on basically the complaint stage, where the judge in the first amended complaint said, well, we don't have to give you results. Then when they made a motion to dismiss the second amended complaint, he said, in my first ruling, I said that certificate's completely legal. He didn't say that, but he went back and used that. And then in the summary judgment, he incorporated his previous two rulings, none of which actually had ever addressed the issue in the contentions he had raised. So you've got that, the jurisdiction. We've left you with a lot. Can I ask you whether you really consider the value of an injunction in the amount in controversy? Yeah, the amount in controversy, it's a $24,000 car. We listed, I think, six cases where courts said absolutely it wasn't covered. They called CarMax's estimation of the injunction cost preposterous, bordering on, they used, what was it, they called it, you said, bordering on, they said invalid bordering on preposterous. Just like they sent out a memo after they lost the Menifee case. I'm sorry, what's your answer to Judge Wardlaw's question? Maybe I'm not understanding. I apologize. I thought the question was, do you count the value of the injunction? I thought that was the question. That was my question, under the law. You're right. You can count the value of the injunction, it appears under the case law. As we submitted it, and as five other district courts ruled, to comply with the law, just like they issued a one-page memorandum to do after they lost Menifee to say, hey, now give the one-pager, all they have to do is give the existing report that they have, which is something every manufacturer already does. They give you that inspection report. You just give what you have. There's no cost to it. And they call CarMax's estimation preposterous and ridiculous. And in those decisions we gave you in our briefing, judge after judge found that the injunction costs, they were trying to say, of $350,000 were just a complete absurdity. They can just simply give what they already have instead of discarding it. Thank you, counsel. Thank you both very much. The case to discharge you will be submitted, and the court will take a brief 10-minute recess. All rise.
judges: Reinhardt, Kozinski, Wardlaw